**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Daniel S. Guerra (State Bar No. 267559)
Ines Diaz Villafana (State Bar No. 354099)
Joshua B. Glatt (State Bar No. 354064)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com
dguerra@bursor.com
idiaz@bursor.com
jglatt@bursor.com
jwilner@bursor.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

LAURA ALBRIGO, ANDREA MITCHELL, and KUCELI MARI, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

MRS. GOOCH'S NATURAL FOOD MARKETS, INC., WHOLE FOODS MARKET CALIFORNIA, INC., WFM PRIVATE LABEL LLC, and AMAZON.COM SERVICES LLC.

Defendants.

Case No. 3:25-cv-03045-BTM-JAC

**SECOND AMENDED CLASS ACTION COMPLAINT**

JURY TRIAL DEMANDED

Plaintiffs Laura Albrigo, Andrea Mitchell, and Kuceli Mari ("Plaintiffs"), individually and on behalf of all others similarly situated, allege the following on information and belief, by and through the investigation of undersigned counsel, except that Plaintiffs' allegations as to facts pertaining to themselves are based on personal knowledge:

## NATURE OF THE ACTION

1. This is a class action lawsuit arising from Defendants Mrs. Gooch's Natural Food Markets, Inc. *d/b/a* Whole Foods Market, Whole Foods Market California, Inc. *d/b/a* Whole Foods Market, WFM Private Label LLC, and Amazon.com Services LLC ("Defendants"), who, together are responsible for manufacturing, distributing, labeling, and selling of Defendants' 365 Organic Orange Juice fortified with Vitamin D (the "Products")[1].

2. "Vitamin D is essential for human health."[2] Among other benefits, vitamin D supports calcium absorption, bone health, muscle function, and immune health. Unfortunately, many people have insufficient levels of vitamin D. As a result, where permitted by the U.S. Food and Drug Administration ("FDA"), many manufacturers fortify their products with vitamin D to not only increase the products' nutritional benefits, but to help ensure more people consume these essential nutrients.

---

[1] Discovery may demonstrate the need to adjust the scope of the Products. Accordingly, Plaintiffs reserve the right to amend their complaint to include additional substantially similar Products should litigation prove necessary.

[2] *Food Additives Permitted for Direct Addition to Food for Human Consumption; Vitamin D3,* FOOD AND DRUG ADMINISTRATION, FEDERAL REGISTER, Vol. 68, No. 39 (February 27, 2003), https://www.govinfo.gov/content/pkg/FR-2003-02-27/pdf/03-4604.pdf at 9001.

3. Defendants are such sellers and manufacturers. Defendants claim to sell juice products that purport to offer consumers 5 micrograms ("mcg") of vitamin D per 240 mL serving (one cup, a "Serving") or 25% of the Daily Value.

4. However, independent testing conducted by an ISO/IEC 17025:2017 accredited and FDA recognized laboratory found that, contrary to Defendants' 5 mcg of vitamin D per Serving representation (the "Vitamin D Representation"), the Products contain zero mcgs of vitamin D per Serving.

5. Accordingly, Plaintiffs bring claims on behalf of themselves and proposed classes for violations of (i) California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.;* (ii) California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*.; (iii) California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq*.; (iv) Breach of Express Warranty; and (v) Unjust Enrichment.

## PARTIES

6. Plaintiff Laura Albrigo is a California citizen residing in San Diego, California. Plaintiff consistently purchased Defendants' Organic Orange Juice with Calcium and Vitamin D from Whole Foods' brick and mortar stores in San Diego, California and online from Amazon, on a monthly basis, including in May of 2025. When purchasing the Products, Plaintiff reviewed the nutrition label on the Products' packaging, including the Vitamin D Representation. Plaintiff reasonably understood Defendants' Vitamin D Representation to mean that the Products contained 5 micrograms of vitamin D per Serving. Plaintiff Albrigo relied on this representation and warranty in deciding to purchase the Products. These representations and warranties were part of the basis of the bargain in that she would not have purchased Defendants' Products or would have paid less for them had she known that the vitamin D content in the Products was less than Defendants represented.

Accordingly, Plaintiff was injured and lost money because of Defendants' deceptive and unfair conduct.

7. Plaintiff Albrigo remains interested in purchasing Defendants' Products in the future. However, unless and until she can determine if the Products are accurately labeled, she will be unable to rely on the truth of Defendants' labeling. So long as the Products are labeled as containing 5 mcg of vitamin D per Serving—when they actually contain no vitamin D—Plaintiff will be unable to make informed decisions about whether to purchase the Products in the future and will be unable to evaluate the different prices between Defendants' Products and competitors' products. Plaintiff will likewise be unable to rely on Defendants' marketing and representations going forward. Moreover, she is likely to be repeatedly misled by Defendants' conduct, unless and until Defendants are compelled to ensure that their marketing is accurate, non-misleading, and that their Products actually contain the amount of vitamin D per Serving that they purport to contain.

8. Plaintiff Andrea Mitchell is a California citizen residing in Venice, California. Plaintiff consistently purchased Defendants' Organic Orange Juice with Calcium and Vitamin D from various Whole Foods' brick and mortar stores in Venice, California and online from Amazon. Plaintiff Mitchell purchased and consumed the Products as long ago as 2021 and continued purchasing the Product on a regular basis for herself and her children, including in May of 2025. When purchasing the Products, Plaintiff reviewed the nutrition label on the Products' packaging, including the Vitamin D Representation. Plaintiff reasonably understood Defendants' Vitamin D Representation to mean that the Products contained 5 mcg of vitamin D per Serving. Plaintiff relied on this representation and warranty in deciding to purchase the Products. These representations and warranties were part of the basis of the bargain in that she would not have purchased Defendants' Products or would have paid less for them had she known that the vitamin D content in the

Products was less than Defendants represented. Accordingly, Plaintiff was injured and lost money because of Defendants' deceptive and unfair conduct.

9. Plaintiff Mitchell remains interested in purchasing Defendants' Products in the future. However, unless and until she can determine if the Products are accurately labeled, she will be unable to rely on the truth of Defendants' labeling. So long as the Products are labeled as containing 5 mcg of vitamin D per Serving—when they actually contain no vitamin D—Plaintiff Mitchell will be unable to make informed decisions about whether to purchase the Products in the future and will be unable to evaluate the different prices between Defendants' Products and competitors' products. Plaintiff Mitchell will likewise be unable to rely on Defendants' marketing and representations going forward. Moreover, she is likely to be repeatedly misled by Defendants' conduct, unless and until Defendants are compelled to ensure that their marketing is accurate, non-misleading, and that their Products actually contain the amount of vitamin D per Serving that they purport to contain.

10. Plaintiff Kuceli Mari is a California citizen residing in San Francisco, California. Plaintiff consistently purchased Defendants' Organic Orange Juice with Calcium and Vitamin D from a Whole Foods store in San Francisco, California including in December 2025 and in the years prior. When purchasing the Products, Plaintiff reviewed the nutrition label on the Products' packaging, including the Vitamin D Representation. Plaintiff reasonably understood Defendants' Vitamin D Representation to mean that the Products contained 5 mcg of vitamin D per Serving. Plaintiff relied on this representation and warranty in deciding to purchase the Products. These representations and warranties were part of the basis of the bargain in that she would not have purchased Defendants' Products or would have paid less for them had she known that the vitamin D content in the Products was less than

Defendants represented. Accordingly, Plaintiff was injured and lost money because of Defendants' deceptive and unfair conduct.

11. Plaintiff Mari remains interested in purchasing Defendants' Products in the future. However, unless and until she can determine if the Products are accurately labeled, she will be unable to rely on the truth of Defendants' labeling. So long as the Products are labeled as containing 5 mcg of vitamin D per Serving—when they actually contain no vitamin D—Plaintiff Mari will be unable to make informed decisions about whether to purchase the Products in the future and will be unable to evaluate the different prices between Defendants' Products and competitors' products. Plaintiff Mari will likewise be unable to rely on Defendants' marketing and representations going forward. Moreover, she is likely to be repeatedly misled by Defendants' conduct, unless and until Defendants are compelled to ensure that their marketing is accurate, non-misleading, and that their Products actually contain the amount of vitamin D per Serving that they purport to contain.

12. Defendant Mrs. Gooch's Natural Foods Markets, Inc. is a California corporation with its principal place of business in Glendale, California. Defendant operates Whole Foods Market grocery stores throughout Southern and Central California. Defendant produces, markets, manufactures, and sells its Products under the 365 brand throughout California and the United States.

13. Defendant Whole Foods Market California, Inc. is a California corporation with its principal place of business in Emeryville, California. Defendant operates Whole Foods Market grocery stores throughout Northern California. Defendant produces, markets, manufactures, and sells its Products under the 365 brand throughout California and the United States.

14. Defendant WFM Private Label LLC is a Delaware limited liability company with its principal place of business in Austin, Texas. Until December 2025,

Defendant was responsible for reviewing and approving all 365-branded labels, including the label affixed to the Products at issue, throughout U.S. and California brick-and-mortar stores, including Whole Foods Market grocery stores operated by Defendants Mrs. Gooch's Natural Foods Markets, Inc. and Whole Foods Market California, Inc. and online.

15. Defendant Amazon.com Services LLC is a Delaware limited liability company with its principal place of business in Seattle, Washington. Defendant Amazon.com Services LLC is currently responsible for reviewing and approving all 365-branded labels, including the label affixed to the Products at issue, throughout U.S. and California brick-and-mortar stores, including Whole Foods Market grocery stores operated by Defendants Mrs. Gooch's Natural Foods Markets, Inc. and Whole Foods Market California, Inc. and online.

16. Defendants, together, are jointly and severally liable for the conduct at issue. Defendants work together and in concert to put the Products into the stream of commerce throughout the United States with the false and misleading labels and Vitamin D content.

## JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendants, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

18. This Court has specific personal jurisdiction over Defendants because Defendants sold the Products to consumers in California, including to Plaintiffs in California. Defendants derive substantial revenue from the sale of their Products in California and purposefully avails themselves to the benefits of conducting business in California, with knowledge that its Products are being marketed and sold here.

19. Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiffs' claims took place in this District. Specifically, Plaintiff Albrigo purchased 365 Organic Orange Juice with Vitamin D in this District.

## FACTUAL ALLEGATIONS

### I. BACKGROUND ON VITAMIN D

20. Vitamin D is a nutrient essential for human health. Among other benefits, vitamin D helps the body absorb calcium, promotes bone mineralization and growth, reduces inflammation, and promotes immune function.[3] Vitamin D is also essential to promoting muscle development and functions. Studies have shown a link between vitamin D deficiency and muscle weakness, pain, and atrophy.[4]

21. Given vitamin D's critical role in human health, and bone development and growth specifically, vitamin D intake is crucial at all stages of life.[5]

22. Indeed, the National Institutes of Health has developed recommended daily consumption amounts for Americans at all stages of life:[6]

---

[3] NATIONAL INSTITUTES OF HEALTH, OFF. OF DIETARY SUPPLEMENTS, *Vitamin D fact sheet*, U.S. DEP'T. OF HEALTH AND HUM. SERVS. (July 24, 2024), *available at* https://ods.od.nih.gov/factsheets/VitaminD-HealthProfessional/.

[4] Christian M. Girgis & Tara C. Brennan-Speranza, *Vitamin D and Skeletal Muscle: Current Concepts From Preclinical Studies*, Amer. JBMR PLUS, Vol. 5, No. 12 (Oct. 24, 2021), 1-7, at 1, *available at* https://pubmed.ncbi.nlm.nih.gov/34950830/.

[5] PEDIMED CENTER, *Your Child and the Importance of Vitamin D*, *available at* https://www.pedimedcenter.com/blog/306690-your-child-and-the-importance-of-vitamin-d#:~:text=Vitamin%20D%20deficiency%20is%20incredibly,their%20vitamin%20D%20from%20sunlight.

[6] NAT'L INST. OF HEALTH, OFF. OF DIETARY SUPPLEMENTS, *Vitamin D*, U.S. Dep't. of Health and Hum. Servs. (Nov. 8, 2022), *available at* https://ods.od.nih.gov/factsheets/VitaminD-Consumer/.

| Life Stage | Recommended Amount |
|---|---|
| Birth to 12 months | 10 mcg (400 IU) |
| Children 1–13 years | 15 mcg (600 IU) |
| Teens 14–18 years | 15 mcg (600 IU) |
| Adults 19–70 years | 15 mcg (600 IU) |
| Adults 71 years and older | 20 mcg (800 IU) |
| Pregnant and breastfeeding teens and women | 15 mcg (600 IU) |

23. Vitamin D can come from a few sources, including: sun exposure, foods that have natural sources of vitamin D like fatty fish and egg yolks, and supplements.[7] But, "[d]ue to the limited natural food sources of vitamin D, many products, including … dairy items[] and plant-based milks, are fortified with vitamin D2 and D3."[8] These foods, commonly referred to as fortified foods, "provide most of the vitamin D in American diets."[9] Accordingly, nearly all of the milk produced in the U.S. is fortified with at least 3 mcg of vitamin D per cup.[10]

24. However, "[a]pproximately 30-50 million Americans are lactose intolerant" or allergic to lactose.[11] Therefore, fortified milk is not an option for these Americans.

---

[7] *Id.*

[8] Maya Shetty, *Vitamin D: Benefits, Sources, Deficiency*, STANFORD UNIVERSITY LIFESTYLE MEDICINE (Mar. 11, 2024), *available at* https://longevity.stanford.edu/lifestyle/2024/03/11/vitamin-d-benefits-sources-deficiency/.

[9] NAT'L INST. OF HEALTH, OFF. OF DIETARY SUPPLEMENTS, *Vitamin D Fact Sheet for Health professionals*, *available at* https://ods.od.nih.gov/factsheets/VitaminD-HealthProfessional/.

[10] *Id.*

[11] AUSTIN GASTROENTEROLOGY, *Dairy-Free Diet For Lactose Intolerance*, https://www.austingastro.com/health-wellness/dairy-free-diet/.

25. In 2003, the FDA, in response to a petition filed by The Minute Maid Co., amended its "food additive regulations to provide for the safe use of vitamin D3 as a nutrient supplement in calcium-fortified fruit juices and juice drinks (except those processed for infants).[12] Since then, multiple studies and health guidelines recommend vitamin D-fortified orange juice as a suitable alternative to fortified milk.[13]

26. Americans rely heavily on fortified foods, including fortified juice, like the Products, to reach their recommended daily amount of vitamin D.[14]

## II. DEFENDANTS' PRODUCTS MISSTATE THE VITAMIN D CONTENT

27. Defendants' Products prominently claim to include "Vitamin D" on the Product's packaging.

---

[12] FEDERAL REGISTER, FOOD AND DRUG ADMINISTRATION, *Food Additives Permitted for Direct Addition to Food for Human Consumption; Vitamin D3* (February 27, 2003), https://www.federalregister.gov/documents/2003/02/27/03-4604/food-additives-permitted-for-direct-addition-to-food-for-human-consumption-vitamin-d3#:~:text=The%20Food%20and%20Drug%20Administration%20(FDA)%20is%20amending%20the%20food,FOR%20FURTHER%20INFORMATION%20CONTACT:.

[13] *See e.g.,* Vin Tangpricha, et. al, *Fortification of orange juice with Vitamin D: a novel approach for enhancing vitamin D nutritional health*, AM J CLIN NUTR. (2003 JUN);77(6):1478-83, DOI: 10.1093/ajcn/77.6.1478; Christina D. Economos, et al, *Multinutrient-fortified juices improve vitamin D and vitamin E status in children: a randomized controlled trial*, J ACAD NUTR DIET, 2014 May;114(5):709-17, DOI: 10.1016/j.jand.2013.07.027; Jason Howland, *Mayo Clinic Minute: How to get calcium without dairy products*, MAYO CLINIC (September 19, 2018), https://newsnetwork.mayoclinic.org/discussion/mayo-clinic-minute-how-to-get-calcium-without-dairy-products/.

[14] NAT'L INST. OF HEALTH, OFF. OF DIETARY SUPPLEMENTS, *Vitamin D Fact Sheet for Health professionals*, *available at* https://ods.od.nih.gov/factsheets/VitaminD-HealthProfessional/.










28. On the nutrition panel, Defendants specify that "Vitamin D" means the Products contain 5 mcg of vitamin D per Serving.




29. However, in May 2025, independent testing commissioned by Plaintiffs' Counsel to test the vitamin D content of a randomly selected 59 fluid ounce variety of Defendants' Products found that no vitamin D was detected in the Product.

30. The testing was conducted by an ISO/IEC 17025 accredited laboratory.[15] The testing was conducted using the AOAC 2012.11 method, developed for testing vitamins D2 and D3.

## III. DEFENDANTS' JUICE PRODUCTS ARE SUBSTANTIALLY SIMILAR TO THE VERSION PLAINTIFFS PURCHASED AND THE LAB TESTED

31. The test results of the 59 fluid ounce variety of Defendants' Products are representative of Defendants' 89 fluid ounce and 52 fluid ounce varieties because they are substantially similar to the Products Plaintiffs purchased.

32. Defendants' 89 fluid ounce and 52 fluid ounce varieties are sold with nearly identical labeling, all prominently including "Calcium + Vitamin D" on the front of the label. These varieties also claim to contain 5 micrograms of vitamin D on the nutritional facts label.[16]

---

[15] *See* INTERNATIONAL STANDARD OF ORGANIZATION, *available at* https://www.iso.org/standard/66912.html#:~:text=Why%20is%20ISO/IEC%2017025,technical%20proficiency%2C%20and%20scientific%20rigor ("ISO/IEC 17025 is the international standard for testing and calibration laboratories. It sets out the requirements for competence, impartiality, and consistent operation of laboratories, ensuring the accuracy and reliability of their testing and calibration results.").

[16] *See* https://www.amazon.com/365-Whole-Foods-Market-Calcium/dp/B0CXZBCTFC/ref=sr_1_1 (showing image of the nutrition label stating the product contains 5 mcg of vitamin D); https://www.wholefoodsmarket.com/product/365-by-wfm-organic-100-orange-juice-calcium-vitamin-d-not-from-concentrate-89-fl-oz-b074h6m3qj (same).







33. Significantly, each claims to contain vitamin D on the front label. On the back, each specifies that it contains 5 micrograms of vitamin D on the nutrition label, thus making the Vitamin D Representation on the packaging identical across these Products.

34. Defendants' Products are sold in nearly identical packaging, featuring prominent claims that the Products contain vitamin D.

35. In addition to Defendants' uniform marketing of its Products, each is produced, packaged, and sold by Defendants under similar supervisory and production conditions.

36. Orange juice does not naturally contain vitamin D, but instead, is fortified by manufacturers.[17] This includes Defendants' Products. Thus, Defendants are necessarily aware of—and exercise control over—the amount of vitamin D added to the Products during production. Accordingly, all versions of Defendants' juice Products (*i.e.*, the 52 fluid ounce container, the 59 fluid ounce container and the 89 fluid ounce container) are labeled nearly identically and subject to similar quality control scrutiny.

37. Accordingly, all sizes of Defendants' Products which prominently represent that they contain "Vitamin D" are substantially like that which Plaintiffs purchased and the lab tested.

## IV. DEFENDANTS' PRODUCTS ARE MISBRANDED

38. Defendants' Products are misbranded. They fail to contain a vitamin D nutrient content equal to that stated on the label.

39. The Food, Drug, and Cosmetic Act ("FDCA") defines two classes of nutrients: Class I and Class II nutrients. *See* 21 C.F.R. § 101.9(g)(3). Relevant here, Class I nutrients are "[a]dded nutrients in fortified or fabricated foods." *Id.* The vitamin D in the Products is considered a Class I nutrient because the Products are fortified with vitamin D.

40. For a product containing Class I nutrients, "the nutrient content of the composite must be formulated to be at ***least equal to*** the value for that nutrient declared on the label." 21 C.F.R. § 101.9(g)(4)(i) (emphasis added). A product failing to meet this requirement is considered misbranded. 21 C.F.R. § 101.9(g)(4).

---

[17] GOODRX, *13 Foods That Are Hight in Vitamin D*, https://www.goodrx.com/conditions/vitamin-d-deficiency/best-food-sources-for-vitamin-d?srsltid=AfmBOoq7p9UAvu7hhDcb6KkqC_0HHnV8zPzMdzflWyugndUi-AfEf6X4; WEBMD, *Foods High in Vitamin D*, https://www.webmd.com/vitamins-and-supplements/ss/slideshow-foods-high-in-vitamin-d.

41. Thus, Defendants' Products are misbranded under the FDCA because they do not contain the amount of vitamin D Defendants represent on the label.

42. A product that is "misbranded" cannot legally be manufactured, advertised, distributed, or sold. 21 U.S.C. § 331(a).

43. California's Sherman Law expressly incorporates all drug labeling requirements set forth in the FDCA. *See* Cal. Health & Safety Code § 110100(a). The Sherman Law provides that any food is misbranded if it does not conform to FDCA requirements.

44. Each of Defendants' violations of federal law and regulations are also violations of California's Sherman Law, including, but not limited to, the following sections:

(a) Section 110100 (adopting all U.S. Food and Drug Administration ("FDA") regulations as state regulations);

(b) Section 110660 (false or misleading labeling);

(c) Section 110665 (not conforming to nutrition labeling requirements);

(d) Section 110690 (misleading container);

(e) Section 110760 (manufacture, sale, delivery, holding or offer of misbranded food);

(f) Section 110765 (misbranding food);

(g) Section 110770 (reception or delivery of misbranded food).

45. Thus, the underfill of vitamin D in the Products renders the Products misbranded and therefore illegal and unfit for sale in trade or commerce.

## V. DEFENDANTS' MISREPRESENTATIONS AND OMISSIONS INJURED PLAINTIFFS AND CLASS MEMBERS

46. Defendants expressly and affirmatively represent on the Products' labels that they contain 5 micrograms of vitamin D per Serving. However, because the Products do not contain the specified quantity of vitamin D, Defendants' representations are false and misleading.

47. The amount of vitamin D in the Products is material to Plaintiffs and similarly situated consumers given the importance of consuming recommended amounts of vitamin D. Consumers further understand that fortified juice is a good source of vitamin D. If Plaintiffs and putative class members knew that the Products did not contain *any* vitamin D in the Products, Plaintiffs and Class members would not have purchased the Products, or they would have paid less for the Products than they did.

48. Defendants' uniform marketing of their Products track with reasonable consumers' expectations of the vitamin D benefits of fortified orange juice.

49. A 2007 consumer study found that "85 percent of respondents say that health and nutrition is 'very / somewhat important' when choosing food and beverages [and] [a]bout two-thirds of the respondents say they are 'very likely / somewhat likely' to buy products that communicate health benefits on the package[.]"[18]

50. A 2024 trends analysis report related to the orange juice market found that "[c]onsumers are increasingly demanding clean-label products in the functional

---

[18] Judith Jarvis, *Communicating Dairy's Nutrient Power to Consumers*, DAIRY FOODS (Jan. 22, 2009), https://www.dairyfoods.com/articles/84357-communicating-dairy-s-nutrient-power-to-consumers#:~:text=In%20addition%2C%20consumers%20believe%20milk,reduce%20the%20risk%20of%20osteoporosis.&text=The%20majority%20of%20consumers%20(74,desire%20for%20naturally%20healthy%20products.&text=Calling%20attention%20to%20the%20inherent,competitive%20superiority%20in%20the%20marketplace.

beverage space, including calcium-fortified orange juices" and this "shift is driven by growing health awareness and skepticism toward chemical additives."[19]

51. And these "wellness-focused consumers" represent a "heightened health awareness and a strong preference for functional beverages rich in essential nutrients such as … vitamin D."[20]

52. Given Defendants' own labels' emphasis on the existence of "Vitamin D" in their Products, Defendants are certainly aware of—and seek to benefit from—this existing market preference. Plaintiffs and similarly situated consumers are seeking "vitamin D"-branded juice products like Defendants'.

53. Unfortunately, consumers lack the ability to test or independently ascertain or verify whether the Products truly contain the levels of vitamin D Defendants claim. Thus, consumers must rely on Defendants to truthfully and honestly report the vitamin D content of the Products on the Products' packaging.

54. Yet, when consumers look at the Products' packaging and specifically its Vitamin D Representation, they are led to believe that the Products have significantly more vitamin D than they actually contain.

## **FED. R . CIV. P. 9(b) ALLEGATIONS**

55. Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Though Defendants are best situated to know the composition of their Products, to the extent necessary, as detailed in the

---

[19] Pawan Gusain, *Global Calcium-Fortified Orange Juice Market Size, Share, and Trends Analysis Report – Industry Overview and Forecast to 2032,* DATA BRIDGE MARKET RESEARCH (June 2024), https://www.databridgemarketresearch.com/reports/global-calcium-fortified-orange-juice-market#:~:text=Consumers%20are%20increasingly%20demanding%20clean,no%20preservatives%E2%80%9D%20on%20its%20label.

[20] *Id.*

paragraphs above and below, Plaintiffs have satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity.

56. **WHO:** Defendants Mrs. Gooch's Natural Food Markets, Inc. *d/b/a* Whole Foods Market, Whole Foods Market California, Inc. *d/b/a* Whole Foods Market, WFM Private Label LLC, and Amazon.com Services LLC.

57. **EACH DEFENDANT'S ROLE:** Each Defendant played a distinct and particularized role in formulating, labeling, approving, or disseminating the Vitamin D Representation.

(a) Defendants Mrs. Gooch's Natural Food Markets, Inc. and Whole Foods Market California, Inc. sell the Products under the 365 brand—Mrs. Gooch's throughout Southern and Central California, and Whole Foods Market California, Inc. throughout Northern California.

(b) Defendants WFM Private Label LLC and Amazon.com Services LLC review, develop, and provide advice on and approval of the 365 private-label labels and label claims, including the Vitamin D Representation on the Products across their retail locations.

Each Defendant therefore directly participated in creating, approving, or disseminating the specific misrepresentation at issue and is alleged to have done so with the particularity required by Rule 9(b).

58. **WHAT:** Defendants' conduct was, and continues to be, deceptive because they deceived consumers into believing that the Products have 5 micrograms of vitamin D per Serving even though testing of one of the Products found it contained no vitamin D. Even though Defendants were in control of, aware of, or should have been aware of, the amount of vitamin D they added to their Products, Defendants failed to accurately fill the Products with the correct amount of vitamin D listed on the nutritional label and failed to accurately state the amount of vitamin D in the Products. Defendants knew, or should have known, this information is

material to reasonable consumers. Yet, Defendants misrepresented on the labeling and advertising of their Products that the Products contain more vitamin D than they do. Defendants failed to ensure the Products in fact contain the amount of vitamin D represented on the packaging. Defendants knew or should have known that the Products contained less vitamin D than advertised because Defendants are the manufacturers and labelers of the Products and have quality control testing protocols set in place that should have identified the underfill of vitamin D in the Products.

59. **WHEN:** Defendants engaged in this deceptive conduct continuously throughout the applicable statutory period, including at the point of sale, by printing the false and misleading Vitamin D Representation directly on their Products' packaging.

60. **WHERE:** Defendants' misrepresentations were made through their Products' label and were thus viewed by every purchaser, including Plaintiffs, at the point of sale in every transaction. The Products are sold nationwide in brick-and-mortar stores and online. Defendants' underfill of the vitamin D content occurred in Defendants' manufacturing facilities.

61. **HOW IT IS FALSE:** Defendants misrepresented on the Products' label that they contain 5 micrograms of vitamin D per Serving when they do not. And as discussed in detail throughout the Complaint, Plaintiffs and consumers (including members of the putative classes) read and relied on Defendants' misrepresentations before purchasing the Products.

62. **WHY:** Defendants misrepresented and underfilled the amount of vitamin D in the Products. This representation was material in that it induced consumers like Plaintiffs to purchase the Products for their purported nutritional benefit while charging consumers a price premium. Further, due to the representations and the Products being underfilled, Plaintiffs and members of the putative classes would not have purchased the Products or would have paid less for

them had they known the truth about the vitamin D content. As such, Defendants unlawfully profited by selling the Products to thousands of consumers throughout the nation, including Plaintiffs and the members of the putative classes.

63. **INJURY:** Plaintiffs and Class Members were injured by Defendants' conduct in that they would not have purchased Defendants' Products or would not have purchased them on the same terms, had they known the Products contain less vitamin D than Defendants expressly represent on the packaging.

## CLASS ACTION ALLEGATIONS

64. Plaintiffs seek to represent a class defined as:

> All persons in the United States who purchased the Products for personal or household use during the applicable statute of limitations period (the "**Nationwide Class**").

65. Plaintiffs also seek to represent a Subclass defined as:

> All persons in the State of California who purchased the Products for personal or household use during the applicable statute of limitations period (the "**California Subclass**").

66. Unless otherwise specified, the Nationwide Class and California Subclass shall collectively be referred to as the "Classes."

67. Excluded from the Classes are Defendants and any entities in which Defendants have a controlling interest, Defendants' agents and employees, any Judge and/or Magistrate Judge to whom this action is assigned, and any member of such Judges' staff and immediate families, Defendants' Counsel, and Plaintiffs' Counsel.

68. Subject to additional information obtained through further investigation and discovery, the foregoing definitions of the Classes may be modified, expanded, or narrowed by amendment to the Complaint or at class certification.

69. **Numerosity.** The members of the Classes are geographically dispersed throughout the United States and are so numerous that individual joinder is

impracticable. Upon information and belief, Plaintiffs reasonably estimate there are hundreds of thousands of members in the Classes. Plaintiffs do not know the exact number of members in the proposed Classes, but reasonably believe, based on the scale of Defendants' business, that the Classes are so numerous that individual joinder would be impracticable.

70. **Existence and Predominance of Common Questions of Law and Fact.** Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individual members of the Classes. These common legal and factual questions include, but are not limited to, the following:

(a) Whether the Products contained the stated amounts of vitamin D;

(b) Whether Defendants knew or should have known the Products contained less vitamin D than advertised;

(c) Whether Defendants were unjustly enriched;

(d) Whether the underfill of vitamin D renders the Products misbranded and illegal to sell;

(e) Whether Defendants violated the state consumer protection statutes alleged herein;

(f) Whether Plaintiffs and the Classes have sustained monetary loss and the proper measure of that loss;

(g) Whether a reasonable consumer would consider the amount of vitamin D in the Products to be material;

(h) Whether Plaintiffs and the Classes are entitled to restitution and disgorgement from Defendants; and

(i) Whether the marketing, advertising, packaging,

labeling, and other promotional materials for the Products are deceptive.

71. **Typicality.** The claims of the representative Plaintiffs are typical of the claims of the Classes in that the representative Plaintiffs, like all members of the Classes, purchased the Products, which were underfilled as to vitamin D. The representative Plaintiffs, like all members of the Classes, have been damaged by Defendants' misconduct in the very same way as the members of the Classes. Further, the factual bases of Defendants' misconduct are common to all members of the Classes and represent a common thread of misconduct resulting in injury to all members of the Classes.

72. **Adequacy of Representation.** Plaintiffs will fairly and adequately protect the interests of the Classes. Plaintiffs have retained counsel who are highly experienced in complex consumer class action litigation, and Plaintiffs intend to vigorously prosecute this action on behalf of the Classes. Plaintiffs have no interests that are antagonistic to those of the Classes.

73. **Superiority.** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by members of the Classes are relatively small compared to the burden and expense of individual litigation of their claims against Defendants. It would, thus, be virtually impossible for members of the Classes, on an individual basis, to obtain effective redress for the wrongs committed against them. Furthermore, even if members of the Classes could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding,

economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

## CAUSES OF ACTION

### COUNT I

**Violation Of California's Consumers Legal Remedies Act ("CLRA")**
**California Civil Code § 1750, *et seq.***
**(On Behalf of Plaintiffs and the California Subclass)**

74. Plaintiffs incorporate by reference and re-allege herein all paragraphs alleged above.

75. Plaintiffs bring this claim individually and on behalf of the members of the California Subclass against Defendants.

76. Defendants violated Civil Code § 1770(a)(5) of the CLRA in that Defendants' acts and practices constitute material representations that the Products have characteristics, uses, and/or benefits which they do not.

77. Defendants violated Civil Code § 1770(a)(7) of the CLRA in that Defendants' acts and practices constitute material representations that the Products are of a particular quality, when they are not.

78. Defendants violated Civil Code § 1770(a)(9) of the CLRA in that Defendants' acts and practices constitute the advertisement of goods in question without the intent to sell them as advertised.

79. Defendants misrepresented the vitamin D content in the Products. Specifically, Defendants stated that the Products contain 5 mcg of vitamin D per Serving. However, testing of the Products revealed a Serving contained no vitamin D. Defendants knew this representation was material to reasonable consumers given the importance of vitamin D to human health, their choice to prominently place the Vitamin D representations on the front label, and that orange juice is a common food consumers purchase to incorporate vitamin D into their diet. Nevertheless,

Defendants made the Vitamin D Representation despite underfilling the Products' vitamin D content.

80. Plaintiffs and the California Subclass Members suffered harm because of these violations of the CLRA because they have incurred charges and/or paid monies for the Products that they otherwise would not have incurred or paid had they known the truth about the Products' vitamin D content.

81. On August 11, 2025, prior to the filing of this Complaint, Plaintiffs' counsel sent Whole Foods Market, Inc., an entity affiliated with Defendants, a CLRA notice letter, which complied in all respects with California Civil Code § 1782(a). The letter was sent via certified mail, return receipt requested, advising Defendants that they were in violation of the CLRA and demanding that they cease and desist from such violations and make full restitution by refunding the monies received therefrom. The letter stated that it was sent on behalf of all other similarly situated purchasers.

82. Defendants failed to remedy the issues raised in the notice letter. Accordingly, Plaintiffs seek damages from Defendants for their violations of the CLRA.

83. Accordingly, Plaintiffs and members of the California Subclass seek (1) actual and punitive damages, (2) restitution, (3) reasonable costs and attorneys' fees, and (4) to enjoin the unlawful acts and practices described herein pursuant to Cal. Civ. Code § 1780.

## <u>COUNT II</u>
## Violation Of California's Unfair Competition Law, California Business & Professions Code §§ 17200, *et seq.* (On Behalf of Plaintiffs and the California Subclass)

84. Plaintiffs incorporate by reference and re-allege herein all paragraphs alleged above.

85. Plaintiffs bring this claim individually and on behalf of the members of

the proposed California Subclass against Defendants.

86. Plaintiffs bring this claim in the alternative to claims seeking damages as permitted by Fed. R. Civ. P. 8.

87. By committing the acts and practices alleged herein, Defendants violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.* as to Plaintiffs and the California Subclass, by engaging in unlawful, fraudulent, and unfair conduct.

88. Defendants violated the UCL's proscription against engaging in **unlawful business practices** as a result of its violations of (1) CLRA, Cal. Civil Code §§ 1770(a)(5), (a)(7), and (a)(9); (2) California's Sherman Law; and (3) California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*

89. Defendants' acts, omissions, and practices concerning the Products constitute "unlawful" business acts and practices in that they violate the CLRA, FDCA and, by extension, California's Sherman Law, and implementing regulations including, at least, the following sections:

(a) Section 110100 (adopting all FDA regulations as state regulations);

(b) Section 110660 (false or misleading labeling);

(c) Section 110665 (not conforming to nutrition labeling requirements);

(d) Section 110690 (misleading container);

(e) Section 110760 (manufacture, sale, delivery, holding or offer of misbranded food);

(f) Section 110765 (misbranding food);

(g) Section 110770 (reception or delivery of misbranded food).

90. Defendants' acts and practices described above violate the UCL's

proscription against engaging in **<u>fraudulent business practices</u>** by misrepresenting and overstating the true vitamin D content of the Products despite having superior knowledge of—and total control over—the amount of vitamin D added to the Products. A testing of one of Defendants' juice Products showed the Products actually contained no vitamin D per Serving—a 100% underfill.

91. Defendants' acts and practices described above also violate the UCL's proscription against engaging in **<u>unfair business practices.</u>** Defendants manufactured Products with an underfilled vitamin D content. Defendants then sold these Products at full price even though the Products were underfilled. Defendants' conduct is thus substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive and unscrupulous as the gravity of the conduct outweighs any alleged benefits.

92. Plaintiffs and the California Subclass members suffered a substantial injury by virtue of buying the Products in that they would not have purchased the Products absent Defendants' unlawful, fraudulent, and unfair marketing, advertising, packaging, and misrepresentation about the vitamin D content of its Products, or by virtue of paying an excessive premium price for the unlawfully, fraudulently, and unfairly marketed, advertised, packaged, and labeled Products.

93. Plaintiffs and the California Subclass members had no way of reasonably knowing that the Products they purchased were not as marketed, advertised, packaged, or labeled. Plaintiffs and the California Subclass members are not able to test for the amount of vitamin D in the Products. Thus, Plaintiffs and the California Subclass members could not have reasonably avoided the injury each of them suffered.

94. Plaintiffs and the California Subclass lost money or property as a result of Defendants' UCL violations because: (a) they would not have purchased the Products on the same terms if they knew that the Products had less vitamin D than

advertised; and (b) the Products did not have the characteristics, ingredients, uses, or benefits as promised by Defendants.

95. To the extent Plaintiffs do not have an adequate remedy at law, they plead their claim under the UCL in the alternative to their legal claims. Legal remedies available to Plaintiffs and Class Members are inadequate because they are not equally prompt and certain and in other ways as efficient as equitable relief. Damages are not as equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiffs failed to sufficiently adduce evidence to support an award of damages. Damages and restitution are not the same amount. Equitable relief, including restitution, entitles Plaintiffs to recover all profits from the wrongdoing, which may exceed the available damages at law.

96. For example, the scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted in this Complaint and legal claims for damages are not equally certain as restitution because claims under the UCL and unjust enrichment entail fewer elements.

97. Pursuant to California Business and Professional Code § 17203, Plaintiffs and the California Subclass seek an order of this Court that includes, but is not limited to, enjoining Defendants from continuing their violative conduct and requiring Defendants to: (a) provide restitution to Plaintiffs and the California Subclass members; (b) disgorge all profits obtained as a result of its violations of the UCL; and (c) pay Plaintiffs' and the Subclass' attorneys' fees and costs.

## <u>COUNT III</u>
## Violation of California's False Advertising Law
## Cal. Bus. & Prof. Code § 17500, *et seq.*
## (On Behalf of Plaintiffs and the California Subclass)

98. Plaintiffs incorporate by reference and re-allege herein all paragraphs alleged above.

99. Plaintiffs bring this claim on behalf of themselves and the California Subclass against Defendants.

100. Defendants' acts and practices, as described herein, have deceived and/or are likely to continue to deceive members of the California Subclass and the public. As described throughout this Complaint, Defendants misrepresent the true vitamin D composition of their Products.

101. By Defendants' actions, they have disseminated uniform advertising regarding the Products across California and the U.S. The advertising was, by its very nature, unfair, deceptive, untrue, and misleading within the meaning of Cal. Bus. & Prof. Code § 17500, *et seq*. Such advertisements were intended to, and likely did, deceive the consuming public.

102. The above-described false, misleading, and deceptive advertising Defendants disseminated continues to have a likelihood to deceive in that Defendants affirmatively represented that the Products contained 5 mcg of vitamin D per Serving when independent testing revealed that a sampling of Defendants' Products contained none.

103. In making and disseminating these statements, Defendants knew, or should have known, that their advertising was untrue and misleading in violation of California law. Plaintiffs and the members of the California Subclass based their purchasing decisions on Defendants' materially false and misleading representations and warranties about the composition of their Products. Plaintiffs and the California Subclass were injured in fact and lost money and property as a result, in an amount to be proven at trial.

104. The misrepresentations by Defendants of the material facts described and detailed above herein constitute false and misleading advertising and, therefore, constitute a violation of Cal. Bus. & Prof. Code § 17500, *et seq.*

105. Accordingly, Plaintiffs and the California Subclass seek all monetary and non-monetary relief allowed by law, including (a) restitution of all profits stemming from Defendants' unfair, unlawful, and fraudulent business practices; (b) declaratory relief; (c) reasonable attorneys' fees and costs under Cal. Code Civ. Proc. §1021.5; and (d) injunctive relief, and other appropriate equitable relief.

**COUNT IV**
**Breach of Express Warranty**
**(On Behalf of Plaintiffs and the Classes)**

106. Plaintiffs incorporate by reference and re-allege herein all paragraphs alleged above.

107. Plaintiffs bring this claim individually and on behalf of the Classes against Defendants.

108. Plaintiffs bring this claim under the laws of the State of California.

109. Plaintiffs and the members of the Classes formed a contract with Defendants at the time they purchased the Products.

110. The terms of the contract include the promises and affirmations of fact made by Defendants on the Products' packaging that the Products included 5 mcg of vitamin D.

111. This labeling and advertising constitute express warranties and became part of the basis of the bargain and part of the standardized contract between Plaintiffs, members of the Classes, and Defendants.

112. As set forth above, Defendants purport through their labeling, marketing, and packaging, to create an express warranty that their "Vitamin D"-branded Products contain 5 mcg of vitamin D per Serving. However, Defendants breached their express warranties about the Products by including significantly less vitamin D than stated on the packaging. Simply, the Products do not conform to Defendants' representations and warranties.

113. Plaintiffs and the members of the Classes performed all conditions precedent to Defendants' liability under this contract when they purchased the Products.

114. Plaintiffs and the members of the Classes would not have purchased the Products had they known the true nature of the Products.

115. As a result of Defendants' breach of express warranty, Plaintiffs and members of the Classes suffered financial damage and injury as a result and are entitled to damages, in addition to costs, interest and fees, and attorneys' fees, as allowed by law.

**COUNT V**
**Unjust Enrichment**
**(On Behalf of Plaintiffs and the Classes)**

116. Plaintiffs incorporate by reference and re-allege herein all paragraphs alleged above.

117. Plaintiffs bring this claim individually and on behalf of the members of the Classes against Defendants.

118. This claim is brought in the alternative to the extent permitted by Fed. R. Civ. P. 8.

119. Plaintiffs and the Classes conferred a benefit on Defendants in the form of monies paid to purchase Defendants' Products.

120. Defendants voluntarily accepted and retained this benefit.

121. Because this benefit was obtained unlawfully, namely by selling and accepting compensation for the Products which had less vitamin D than Defendants advertised, it would be unjust and inequitable for the Defendants to retain monies received from its misbranded Products.

122. Plaintiffs and the members of the Classes do not have an adequate remedy at law and plead their claim for unjust enrichment in the alternative to their legal claims. Legal remedies available to Plaintiffs and the members of the Classes

are inadequate because they are not equally prompt and certain and in other ways as efficient as equitable relief. Damages are not as equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiffs failed to sufficiently adduce evidence to support an award of damages. Damages and restitution are not the same amount. Equitable relief, including restitution, entitles Plaintiffs to recover all profits from the wrongdoing, which may exceed the available damages at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendants, as follows:

(a) For an order certifying the Nationwide Class and the California Subclass under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiffs as the representatives for the Classes, and naming Plaintiffs' attorneys as Class Counsel;

(b) For an order declaring the Defendants' conduct violates the statutes referenced herein;

(c) For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

(d) For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e) For prejudgment interest on all amounts awarded;

(f) For an order of restitution and all other forms of equitable monetary relief; and

(g) For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

Dated: June 12, 2026

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ L. Timothy Fisher*
L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Daniel S. Guerra (State Bar No. 267559)
Ines Diaz Villafana (State Bar No. 354099)
Joshua B. Glatt (State Bar No. 354064)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com
dguerra@bursor.com
idiaz@bursor.com
jglatt@bursor.com
jwilner@bursor.com

*Counsel for Plaintiffs*

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, L. Timothy Fisher, declare as follows:

1. I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court. I am a partner at Bursor & Fisher, P.A., counsel of record for Plaintiffs Laura Albrigo, who alleges she resides in San Diego, California, Andrea Mitchell, who alleges she resides in Venice, California, and Kuceli Mari, who alleges she resides in San Francisco, California. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2. The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the Southern District of California. Additionally, Defendants transact substantial business in this District, including sales of the Products at issue, and Defendants advertise and sell the Products at issue in this District.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed at Walnut Creek, California this 12 day of June, 2026.

*<u>/s/ L. Timothy Fisher</u>*
L. Timothy Fisher